IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gloria A. Gibson, ) | C/A No. 0:08-2011-HMH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Gloria A. Gibson ("Gibson"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On May 19, 2005, Gibson applied for SSI and DIB. Gibson's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on July 12, 2007 at which Gibson appeared and testified and was represented by counsel. The ALJ, after hearing the testimony of a vocational expert, issued a decision dated October 19, 2007 finding that Gibson was not disabled within the meaning of the Social Security Act.

Gibson was forty-nine years old at the time of the ALJ's decision. She has at least a high school education and past relevant work experience as a housekeeper, sewing machine operator, and

cook. (Tr. 20.) Gibson alleges disability since March 26, 2004.[1] (See Pl.'s Br. at 2, Docket Entry 24.)

The ALJ found:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful activity since June 9, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lymphedema of the right upper extremity, and status post right mastectomy (20 CFR 404.1520(c) and 416.920(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light[] work activity with no climbing or crawling and no exposure to work hazards or temperature extremes with an exclusion from use of her right arm or hand for anything other than support for objects manipulated with the left hand.

\* \* \*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant was born on January 26, 1958 and was forty-five years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has

---

[1]See infra Discussion Section A (discussing discrepancies in the alleged onset date and addressing Gibson's claims pertaining to that issue).

> transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

\* \* \*

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 9, 2000, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15-21.)

On April 11, 2008, the Appeals Council denied Gibson's request for review, making the decision of the ALJ the final action of the Commissioner. Gibson filed this action on May 27, 2008.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform her past relevant work; and

(5) whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

**ISSUES**

Gibson raises the following four issues for this judicial review:

I. The ALJ's utilization of an incorrect onset date for Mrs. Gibson's claim is reversible error.

II. Substantial evidence does not exist to support the decision of the ALJ in that he failed to find as severe impairments cervical spine degenerative disc disease, shoulder/hand syndrome and bilateral carpal tunnel syndrome.

III. The ALJ committed reversible error in failing to give treating physician Orachun Sitti, MD's medical source statement controlling weight when it was supported by the medical evidence of record.

IV. The ALJ improperly discounted Gloria Gibson's credibility, thus rendering his decision unsupported by substantial evidence.

(Pl.'s Br. at 1, Docket Entry 24.)

**DISCUSSION**

**A. Onset Date**

Gibson first asserts that the ALJ used an incorrect onset date of June 9, 2000 in his decision. (Tr. 13, 15, 21.) This was the onset date provided by Gibson in her initial application; however, as noted by the ALJ at the hearing, this date was erroneous and Gibson's counsel amended that date during the hearing, stating that it should have been March 26, 2003. (Tr. 484.) After the ALJ's decision, Gibson asserted in her appeal to the Appeals Council that the proper onset date was

actually March 26, *2004*, as indicated in Gibson's second application, and not March 26, *2003*. (Tr. 464.)

Gibson argues that the utilization of an incorrect onset date "renders the Commissioner's decision tainted at its most fundamental level and requires the claim to be vacated and remanded." (Pl.'s Br. at 25, Docket Entry 24.) In support of this argument, Gibson relies on Hinchey v. Barnhart, Civil Action No. 5:06cv00047, 2007 WL 1047065 (W.D. Va. April 5, 2007) (unpublished) (Report and Recommendation). In Hinchey, the ALJ considered the plaintiff's disability claim based on a June 15, 1996 disability onset date rather than April 9, 2002, the date Hinchey was terminated from her last substantial gainful work. In recommending remand of the case, the Magistrate Judge noted that

> the ALJ considered in some detail the plaintiff's work and educational undertakings over the entire span of years from 1996 forward, that he considered these activities in connection with his determination that the plaintiff's last work effort at the small loan company job constituted substantial gainful activity, that he considered these activities as part of his assessment the plaintiff's testimonial credibility, and that he considered these activities in weighing the medical evidence.

Hinchey, 2007 WL 1047065, *6. The Magistrate Judge further observed that the ALJ decision presented contradictory findings that Hinchey had not engaged in substantial gainful activity since June 15, 1996 and later concluded that Hinchey was still performing substantial gainful work activity in 2002. Id. at *7.

In response, the Commissioner contends that this error is harmless. The Commissioner points out that at the hearing counsel amended the onset date to March 26, *2003*, that Gibson testified she discontinued working in March 2003, and that Gibson's testimony related only to events after March 2003. Further, the Commissioner asserts that Gibson has not established any prejudice from a misstatement of her onset date because, unlike in Hinchey, the ALJ did not "prejudicially

observe[]" that Gibson engaged in substantial gainful activity since the June 9, 2000 onset date.[2] (Def.'s Br. at 21, Docket Entry 25.)

Courts need not reverse agency action because of a harmless error. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations and internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases). Gibson's assertion that the decision is tainted and that Gibson was deprived of a fair and careful consideration of her claim, without more, fails to establish that this error affected the outcome of the case or changed the substance of the decision in any manner.

**B.     Severe Impairments**

The ALJ concluded that Gibson had "severe" lymphedema of the right upper extremity and status post right mastectomy. (Tr. 15.) However, Gibson alleges that the ALJ erred in failing to find the following severe impairments: spine degenerative disc disease, shoulder/hand syndrome,[3] and bilateral carpal tunnel syndrome. (Pl.'s Br. at 26-29, Docket Entry 24.)

---

[2] To the extent that Gibson argues that the ALJ erred in using the June 9, 2000 onset date "multiple times throughout the decision," (Pl.'s Br. at 26, Docket Entry 24), any potential prejudice from this error is belied by the ALJ's finding that Gibson was forty-five years old at the date of onset, demonstrating that he used the March 2003 onset date. (Tr. 20.)

[3] Gibson asserts that "shoulder/hand syndrome" is another name for complex regional pain syndrome ("CRPS") and reflex sympathetic dystrophy ("RSD") and that this condition is separate and distinct from lymphedema.

A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ noted that Gibson had been diagnosed with carpal tunnel syndrome and cervical degenerative disc disease. However, the ALJ found that "the record does not establish that either impairment has resulted in more than minimal, if any, work-related limitation." (Tr. 16.) Therefore, the ALJ concluded that these conditions were non-severe impairments. The ALJ did not mention or discuss Gibson's alleged shoulder/hand syndrome.

In support of her allegation that the ALJ erred in failing to find that her cervical spine degenerative disc disease was a "severe" impairment, Gibson relies on a January 2006 cervical spine MRI, which Gibson states "revealed spondylosis involving her cervical spine with degenerative disc changes at C5-6 and C6-7, mild bulge of disc present at C3-4 and C4-5, anterior and posterior osteophyte formation and mild ossesous formainal encroachment at multiple levels." (Pl.'s Br. at 27, Docket Entry 24) (citing Tr. 371). However, this MRI also revealed "[n]o significant soft tissue disc or spinal stenosis." (Tr. 371.) Further, in Gibson's "Function Report" she did not indicate that her conditions affected her abilities to stand, walk, sit, or climb stairs. (Tr. 110.) Moreover, as pointed out by the Commissioner, "examinations revealed the absence of sensory deficits (Tr. 363,

*PJG*

433), normal muscle bulk (Tr. 363), the absence of motor deficits (Tr. 433), normal, symmetrical deep tendon reflexes (Tr. 363, 433), and the ability to mount and dismount the examination table and walk independently (Tr. 433)." (Def.'s Br. at 15-16, Docket Entry 25.)

In support of her allegation that the ALJ erred in failing to find that her bilateral carpal tunnel syndrome was a "severe" impairment, Gibson notes the diagnosis of Dr. R. Joseph Healy, Gibson's neurologist, and further alleges that Dr. Orachun Sitti, an oncologist who was Gibson's treating physician, placed limitations on Gibson that included both hands. (Pl.'s Br. at 28, Docket Entry 24.) However, at the hearing, Gibson testified that she believes that she was diagnosed with carpal tunnel syndrome "just in [her] right hand" and, further, when questioned about whether she has any problems at all using her left hand, Gibson stated that "[i]t's fine." (Tr. 492, 494.) Moreover, Dr. Arthur Wilkoszewski, a consultative physician, examined Gibson and determined that she could grasp and manipulate objects well with either hand. (Tr. 433.) Dr. Jafer N. Gheraibeh, a consultative physician, also examined Gibson and found that she could "do fine and gross movements" as well as button and unbutton her shirt. (Tr. 363.) Accordingly, while Gibson may point to evidence to the contrary, the ALJ's findings on Gibson's cervical spine degenerative disc disease and bilateral carpal tunnel syndrome are comfortably within the bounds of the substantial evidence standard.

Finally, with regard to Gibson's alleged shoulder/hand syndrome, Gibson argues that the ALJ erred in failing to address this condition and in failing to conclude that it is a severe impairment. Gibson argues that this syndrome was referred to by both Dr. Sitti and Dr. Healy. The Commissioner argues that "Dr. Sitti is an oncologist rather than a neurologist or an orthopedist, and the record does not establish that his clinical and diagnostic understanding of this syndrome as equating to RSD is

as Plaintiff alleges." (Pl.'s 14.) Further, the Commissioner asserts that RSD was not definitively diagnosed by Dr. Denton, an orthopedist, or Dr. Healy. (Id.)

Even assuming that the ALJ erred in failing to discuss Gibson's alleged condition of shoulder/hand syndrome and in failing to find it was a severe impairment, reversal is not warranted on this ground. The ALJ clearly considered Gibson's limitations with regard to her right upper extremity functioning in his residual functional capacity analysis. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (stating that an ALJ's failure to include a claimant's bursitis among his impairments at step two of the sequential evaluation was harmless error because the ALJ discussed the medical evidence and limitations relating to that impairment at step four of the sequential evaluation). For example, the ALJ expressly considered in detail the examination and treatment notes concerning Gibson's right shoulder. (Tr. 19.) Moreover, based on Gibson's conditions, the ALJ excluded from Gibson's residual functional capacity the "use of her right arm or hand for anything other than support for objects manipulated with the left hand." (Tr. 16.) Accordingly, even if the ALJ erred in failing to expressly consider shoulder/hand syndrome as one of Gibson's impairments, such error was rendered harmless by his consideration of shoulder/hand syndrome symptoms and limitations in his residual functional capacity analysis.

C.     Dr. Orachun Sitti

Gibson next asserts that the ALJ erred in failing to give an opinion of Gibson's treating physician, Dr. Sitti, controlling weight. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources, because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's

opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In this case, the ALJ rejected some of the findings of Dr. Sitti, Gibson's treating physician. (Tr. 18.) Specifically the ALJ did not "accept[] Dr. Sitti's opinion as to the claimant's residual functional capacity except for certain postural limitations, although it has been carefully considered."[4] (Tr. 19.) The ALJ rejected these findings based on his determination that Dr. Sitti's opinion was (1) "not supported by the evidence of record including his own treatment notes;" (2) inconsistent with the reports of Dr. Wilkoszewski and Dr. Gheraibeh, both of whom were consultative examiners; and (3) inconsistent with a January 2006 MRI of Gibson's shoulder. (Tr. 18-19.)

As stated above, the ALJ is not required to give a treating physician's opinion controlling weight and may accord it less weight for a variety of reasons. Hunter, 993 F.2d at 35; Johnson, 434 F.3d at 654. In this case, the ALJ discussed in detail his reasons for not accepting all of Dr. Sitti's opinions. While the plaintiff attempts to undermine each of these reasons, she has not pointed to any medical evidence which would render the ALJ's conclusions unsupported. See Craig, 76 F.3d at 589

---

[4]The ALJ appears to have rejected Dr. Sitti's indication that Gibson "was limited to occasionally lifting/carrying less that 10 pounds, standing less [than] two hours in an eight-hour workday, and using her right shoulder to push/pull." Further, the ALJ appears to not have accepted Dr. Sitti's indication that Gibson could balance on an occasional basis only and " was limited to only occasional performance of . . . reaching, handling, fingering, and feeling." (Tr. 19.)

(stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Upon review of the medical evidence and the ALJ's decision, the court finds substantial evidence to support the ALJ's decision to accord Dr. Sitti's opinion less than full weight.

D. **Gibson's Credibility**

Finally, Gibson contends that the ALJ failed to properly assess her credibility. In evaluating subjective complaints of pain, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). In this matter, only the second step is at issue,[5] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain and the extent to which it affects [his] ability to work" Id.

In applying the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[6] (Tr. 17-18.) Thus, the issue is whether the ALJ properly evaluated Gibson's subjective complaints regarding the intensity and persistence of her pain and the extent to which it affects her ability to work. See Craig, 76 F.3d at 594. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations

---

[5]The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).

[6]Specifically, the ALJ found that the record did not support Gibson's "allegations as to the extent that her impairments limit her activities of daily living." (Tr. 18.)

concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints of pain itself or its severity "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id.

     In this case, the ALJ found that the record did not support Gibson's "allegations as to the extent that her impairments limit her activities of daily living." (Tr. 18.) The ALJ expressly considered several factors in discounting the credibility of Gibson's subjective complaints of pain, including not only Gibson's testimony but also the medical and non-medical evidence. (Tr. 20.) The ALJ noted that Gibson testified that she occasionally folded clothes using her left hand and that her spouse and children performed the remainder of the household chores; that she required assistance in showering and fixing her hair; that she spent the majority of a typical day sitting in a chair with her legs elevated; and that she was unable to drive. (Tr. 17.) However, the ALJ noted that examination reports revealed that Gibson remained able to care for her own personal needs, albeit with reported difficulty and assistance in some tasks, and performed at least limited household cleaning and other chores. (Tr. 18; see also Tr. 367, 429, 431.) Further, the ALJ found that treatment records indicated that she was improving, and physical therapy records noted improvement in her shoulder pain. Those records also showed that Gibson "was able to resume her activities of daily living without difficulty." (Tr. 18; see also Tr. 343, 383, 389.)

Having reviewed the record, the court finds that the ALJ conducted a proper analysis in concluding that Gibson's subjective complaints of pain were not entirely credible. See Craig, 76 F.3d at 595. In arguing that the ALJ conducted a selective recitation of Gibson's record, Gibson has not directed the court to any specific evidence that supports her position. Moreover, the ALJ considered Gibson's subjective complaints of disabling pain in conjunction with her abilities to perform daily activities and her medical evidence in determining that Gibson's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. There is substantial evidence supporting the ALJ's finding that Gibson's complaints regarding the effects of her symptoms are inconsistent with the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations of pain "need not be accepted to the extent that they are inconsistent with available evidence . . . ."); Craig, 76 F.3d at 595. Accordingly, the court may not substitute its judgment for the ALJ's. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that the Commissioner's decision was supported by substantial evidence and reached through application of the correct legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 9, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).