IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Gloria A. Gibson, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 0:08-2011-HMH-PJG |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report of United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Gloria A. Gibson ("Gibson") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. In her Report, Magistrate Judge Gossett recommends affirming the Commissioner's decision. For the reasons stated below, the court affirms the Commissioner's decision.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

# I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 13-21), and summarized as follows. At the time of the hearing before the ALJ, Gibson was a forty-nine-year-old woman with a high school education. (Id. at 20.) Her past employment includes work as a cook, a hotel housekeeper, and a sewing machine operator. (Id. at 20.) She alleges disability due to lymphedema in the right upper extremity and status post right mastectomy, cervical spondylosis, shoulder/hand syndrome, and bilateral carpal tunnel syndrome. (Pl. Br. 23-24.)

On May 19, 2005, Gibson filed applications for DIB and SSI. (R. at 13.) The applications were denied initially and on reconsideration. On October 19, 2007, after a hearing on July 12, 2007, the ALJ found that Gibson was not disabled. (Id. at 13.) On April 11, 2008, the Appeals Council denied Gibson's request for review. (Id. at 3.) Gibson filed the instant action on May 27, 2008.

# II. The Magistrate Judge's Report

Gibson raised the following issues in her brief:

I. The ALJ's utilization of an incorrect onset date for Mrs. Gibson's claim is reversible error.
II. Substantial evidence does not exist to support the decision of the ALJ in that he failed to find as severe impairments cervical spine degenerative disc disease, shoulder/hand syndrome and bilateral carpal tunnel syndrome.
III. The ALJ committed reversible error in failing to give treating physician Orachun Sitti, MD's [("Dr. Sitti")] medical source statement controlling weight when it was supported by the medical evidence of record.
IV. The ALJ improperly discounted Gloria Gibson's credibility, thus rendering his decision unsupported by substantial evidence.

(Pl. Br. 1.) The magistrate judge concluded that any error regarding the disability onset date was harmless and with regard to the remaining issues, the ALJ's decision was supported by substantial evidence. (Report and Recommendation, generally.) For these reasons, the magistrate judge recommended affirming the Commissioner's decision.

### III. Discussion of the Law

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the Secretary [only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

**B. Objections**

Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Gibson contends that the ALJ erred in (1) failing to address Gibson's claim using the proper disability onset date; (2) failing to find Gibson's degenerative disc disease, shoulder/hand syndrome, and bilateral carpal tunnel syndrome to be severe impairments; (3) failing to afford the opinions of Dr. Sitti, Gibson's treating physician, controlling weight; and (4) finding that Gibson's allegations of pain were not credible. (Objections, generally.)

**1. Incorrect Disability Onset Date**

Gibson argues that this matter must be remanded because the ALJ's decision was based on a June 9, 2000 disability onset date as opposed to the correct disability onset date of March 26, 2004. At the hearing, Gibson amended her disability onset date from June 9, 2000 to March 26, 2003. (R. at 484 (emphasis added).) After the hearing, Gibson argued before the Appeals Council that the actual disability onset date was March 26, 2004, the date Gibson ceased any substantial work activity. (Pl. Br. 25.) In his decision, the ALJ consistently references June 9, 2000, as the disability onset date. (R. at 13-21.) However, this appears to be a clerical error as the ALJ also states that Gibson was forty-five years old as of the disability onset date indicating that the ALJ used March 26, 2003, as the onset date. Further, the ALJ

references no medical evidence prior to March 26, 2003. Therefore, the ALJ did not consider June 9, 2000, as the disability onset date and any references in the decision to this date are merely clerical error.

With respect to the use of the March 26, 2003 date, the ALJ considered very little medical evidence prior to March 26, 2004. The ALJ references a May 6, 2003 progress note from Gibson's treating physician, Dr. Sitti, indicating that Gibson "did not have any limitation of her right shoulder movement." (R. at 19.) In addition, the ALJ references a January 2004 report from Dr. Reginald S. Bolick ("Dr. Bolick"), a surgeon, indicating that Gibson had good range of motion in her shoulder. (Id.)

Gibson cites Hinchy v. Barnhart, Civil Action No. 5:06cv00047, 2007 WL 1047065 (W.D. Va. Apr. 5, 2007) (unpublished), to support her argument that the case must be remanded because the ALJ utilized an incorrect date. The court disagrees. In determining whether the plaintiff was disabled, the ALJ in Hinchey considered the fact that she had worked after the disability onset date. 2007 WL 1047065, at *6. The court found that "[b]y his utilization of a grossly incorrect onset date throughout the decisional analysis, the ALJ in this case simply failed fully and fairly to consider the plaintiff's claim." Id. The disability onset date considered by the ALJ was June 15, 1996, as opposed to the date the plaintiff was terminated from her last substantial gainful work on April 9, 2002. The court noted that

> [t]he record shows that the ALJ considered in some detail the plaintiff's work and educational undertakings over the entire span of years from 1996 forward, that he considered these activities in connection with his determination that the plaintiff's last work effort at the small loan company job constituted substantial gainful activity, that he considered these activities as part of his assessment [of] the plaintiff's testimonial credibility, and that he considered these activities in weighing the medical evidence.

5

Id. Further, the court stated that "a full and fair consideration of functionality requires a look longitudinally at multiple factors, including duration, intensity, frequency and type of physical activity." Id.

To the contrary, in the instant action, the ALJ found that Gibson had not engaged in any substantial gainful activity since the disability onset date. (R. at 15.) Therefore, the ALJ did not consider any work performed by Gibson. Further, the ALJ considered an onset date that was incorrect by only one year, not a seven-year span as in Hinchey. In addition, the minimal medical evidence considered by the ALJ prior to the March 26, 2004 date is consistent with the other medical evidence post March 26, 2004. Gibson has failed to show how she has been prejudiced by the use of the March 26, 2003 date. An error is harmless if it does not prejudice Gibson. Camp v. Massanari, No. 01-1924, 2001 WL 1658913, at *1 (4th Cir. Dec. 27, 2001) (unpublished) (Claimant "made no showing of prejudice. Thus, any error on the part of the ALJ was harmless."). Therefore, this objection is without merit.

### 2. Severe Impairments

Gibson argues that the ALJ erred in failing to find Gibson's degenerative disc disease, shoulder/hand syndrome, and bilateral carpal tunnel syndrom to be severe impairments. Step two of the five-step sequential evaluation process requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment or combination of impairments "significantly limits [a claimant's] physical or mental ability to do basic work activities." § 404.1520(c). Basic work activities are defined as

> the abilities and aptitudes necessary to do most jobs. Examples of these include–

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted). The ALJ noted in his decision that he considered Gibson's carpal tunnel syndrome and cervical degenerative disc disease. (R. at 15-16.) The ALJ found that "the record does not establish that either impairment has resulted in more than minimal, if any, work-related limitation." (Id. at 16.)

The court has reviewed the record and finds that the ALJ's conclusion that Gibson's carpal tunnel syndrome and cervical degenerative disc disease are not severe impairments is supported by substantial evidence. With respect to Gibson's cervical degenerative disc disease, Gibson alleges that her MRI indicated that she had degenerative disc disease and that "her problems with her upper extremity were compounded by the cervical spine problem and result in restrictions in lifting." (Objections 3.) Gibson's MRI revealed degenerative disc changes. (R. at 377.) However, the MRI revealed "no significant soft tissue disc or spinal

7

stenosis." (Id.) Dr. Jafer N. Gheraibeh's ("Dr. Gheraibeh") April 2006 consultative examination found that Gibson had normal muscle bulk in her upper and lower extremities. (Id. at 363.) Dr. Arthur Wilkoszewski ("Dr. Wilkoszewski"), a family medicine physician, reported in August 2005 that Gibson had no focal or motor deficits, had symmetrical deep tendon reflexes, stood on her heels and toes, was able to climb on and off the examining table, and was able to ambulate without an assistive device. (Id. at 433.) In addition, Gibson indicated in her Function Report that she was able to walk, stand, sit, and climb stairs. (Id. at 110.) Further, she reported that she could lift 10-15 pounds. (R. at 110.) Based on the foregoing, the ALJ's decision to find Gibson's degenerative disc disease non-severe is supported by substantial evidence.

With respect to her carpal tunnel syndrome, Gibson argues that the ALJ's decision is not supported by substantial evidence based on the findings of Dr. R. Joseph Healy ("Dr.Healy"), a neurologist, who found that Gibson had bilateral carpel tunnel syndrome and assigned limitations in both hands. Notably, Dr. Healy's letter to Gibson's treating physician, which noted that Gibson complained of right arm pain, is devoid of any mention of left arm or hand pain. (Id. at 286.) Further, Gibson's own testimony at the hearing supports the ALJ's conclusion. Gibson testified that she had no limitations in using her left hand and that the carpal tunnel syndrome was only present in her right hand. (Id. at 492, 494.) In addition, in August 2005, Dr. Wilkoszewski indicated that Gibson could grasp and manipulate objects with either hand. (Id. at 433.) Dr. Gheraibeh found that Gibson could button and unbutton her shirt and perform fine and gross movements. (Id. at 363.) Based on the foregoing, the court finds that the ALJ's finding that these impairments are not severe is supported by

8

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays, 907 F.2d at 1456.

Lastly, the ALJ does not discuss shoulder/hand syndrome in her right upper extremity. It is unclear whether Gibson has been formally diagnosed with shoulder/hand syndrome. However, irrespective of this issue, the court agrees with the magistrate judge that at best the failure to consider this impairment is harmless error. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (noting that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" and "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4.").

The ALJ found Gibson's "right arm limitations to clearly be the pivotal issue in th[e] case, and . . . accommodated it b[y] assessing a residual functional capacity which minimizes its use to a very major extent." (R. at 19.) The ALJ limited Gibson "to the performance of light work activity with no climbing or crawling and no exposure to work hazards or temperature extremes with an exclusion from use of her right arm or hand for anything other than support." (Id.) Likewise, the vocational expert testified that the occupations that he had identified could be performed entirely with one hand, including sole use of the non-dominant hand. (Id.) Based on the foregoing, the ALJ fully considered Gibson's right arm limitations in determining her residual functional capacity. Thus, at best, the ALJ's failure to consider the shoulder/hand syndrome was harmless error.

### 3. Treating Physician

The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is well supported by clinical and

laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2) (2006); see Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001) (If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and consistent] with the other substantial evidence in the record . . . [it is not] entitled to 'controlling weight.'") In determining the weight given to a treating physician, the ALJ must consider (1) the relationship the patient has with the examining doctor, (2) the length of the treatment relationship, (3) the frequency of the examination, (4) the nature and extent of the treatment relationship, (5) the relevant evidence, (6) the consistency of the physician's opinion with the remainder of the record, and (7) whether the physician is a medical specialist. 20 C.F.R. § 404.1527.

Specifically, the ALJ did not accept "Dr. Sitti's opinion as to the claimant's residual functional capacity except for certain postural limitations, although it has been carefully considered." (R. at 19.) The ALJ found that Dr. Sitti's opinion was

> not supported by the evidence of record including his own treatment notes given that he reported in May of 2003, that the claimant did not have any limitation of her right shoulder movement and that despite some right arm pain (secondary to repetitive use of the arm) with limited range of motion, the claimant had only minimal swelling to the arm and retained good strength. Also, Dr. Wilkoszewski reported in August of 2005, that despite her limited range of motion to her right shoulder, the claimant could grasp and manipulate objects well with either hand and noted that the claimant did not have any focal or motor deficits; had symmetrical deep tendon reflexes; stood on her heels and toes; and was able to get on and off the examination table and walk without an assistive device. Additionally, MRI of the claimant's right shoulder performed in January of 2006 proved to be normal. Moreover, Dr. Gheraibeh indicated in his April of 2006 consultative examination report[] that the claimant had normal muscle bulk to both her upper and lower extremities. Furthermore, Dr. Sitti related in October of 2006 that the claimant was neurovascularly intact.

(Id. at 18-19 (citations omitted).) Gibson objects that Dr. Sitti's "opinions are not inconsistent with all of the evidence of record taken as a whole. The record is consistent regarding the pain in her arm and that treatment and therapy does not help control the pain. The pain has affected her ability to grasp objects, and she has difficulty reaching overhead." (Objections 4.)

The court has reviewed the record and finds that the ALJ's decision not to afford Dr. Sitti's opinion controlling weight is supported by substantial evidence. In support of her argument, Gibson cites a July 8, 2005 physical therapy note wherein Gibson rated her pain in her right "pec and axillary region" an 8 out of 10. (R. at 385.) However, Gibson reported that "she does not really have pain in her [shoulder] and is able to move her arm a lot better." (Id.) Gibson refers to a May 26, 2004 progress note from Dr. Sitti indicating that Gibson was experiencing pain in her right shoulder after "[s]he did some cleaning and used her right arm a lot." (Id. at 392.) In addition, Gibson refers to a May 26, 2005 visit where she complained of right arm pain after mopping the floor for the previous two months using her right arm. (Id. at 391.) Lastly, Gibson cites a January 17, 2005 progress note by Dr. Bolick who indicated that Gibson "had a little chest wall pain." (Id. at 216.)

The evidence cited by Gibson reveals that she experienced exacerbations of pain in her right arm and shoulder often after mopping, sweeping, or cleaning the floor using her right arm. In addition, other evidence in the record supports the ALJ's decision. On June 9, 2005, Gibson reported to Dr. Sitti some improvement in her arm pain. (R. at 266.) On June 17, 2005, Gibson's physical therapist noted that she "came in with [complaints of] 5/10 pain in her R shoulder and not able to move it over her head, reach to comb her hair or reach

down. [S]ince 2 [months] ago when she did a lot of sweeping and cleaning and lifting pots etc." (Id. at 383.) At the conclusion of her physical therapy, Gibson reported that her pain was down to "3.5/10." (Id.) On June 22, 2005, Gibson reported "decreased pain" to her physical therapist. (Id. at 384.) On July 11, 2005, Dr. Sitti found "marked improvement of the range of motion in the right shoulder" although Gibson reported "persistent pain and tenderness." (Id. at 265.) In a November 14, 2005 progress note from Dr. Sitti, Gibson again indicated that she had "severe pain" on her right side due to the fact that she had been "cleaning the floor, but she is not supposed to." (R. at 264.)

Gibson's pain in her right shoulder and arm increased as a result of mopping, sweeping, and cleaning the floors with her right arm, which Dr. Sitti had instructed Gibson not to do. The ALJ considered in deciding the weight to afford Dr. Sitti's opinion that Gibson experienced pain "secondary to repetitive use of the [right] arm." (Id. at 18.) The ALJ provided a detailed summary of the reasons he declined to afford Dr. Sitti's opinion controlling weight. The evidence cited by Gibson reveals that she experienced exacerbations of pain in her right arm and shoulder often after mopping, sweeping, or cleaning the floor using her right arm against Dr. Sitti's advice. However, the evidence does not support Gibson's argument that Dr. Sitti's opinion is consistent with the other evidence in the record. Based on the foregoing, this objection is without merit.

### 4. Subjective Complaints

Lastly, Gibson alleges that the ALJ failed to assess her credibility properly. "[T]he determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. "First, there must be objective medical evidence showing

the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Id. In order "for pain to be found to be disabling, there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*." Id. "It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." Id. at 595.

> The ALJ found that Gibson's
>
> medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [Gibson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. Specifically, the record does not support [Gibson's] allegations as to the extent her impairments limit her activities of daily living.

(R. at 17-18.) Gibson indicated that

> she occasionally folded clothes using her left hand, but that her spouse and children did the remainder of the household chores. She indicated that she required assistance with taking a shower and fixing her hair. She related that she spent much of a typical day sitting in a chair while leaning back with her legs elevated. [Gibson] further indicated that she was unable to drive.

(Id. at 17.) Further, Gibson reported that she is unable to sit more than two hours and is limited to walking short distances. The ALJ found that Gibson's statements were not entirely credible because in August 2005, she reported to Dr. Wilkoszewski that she was able to bathe unassisted, do laundry, wash dishes, and drive. (Id. at 431.) Dr. S. A. Wurster ("Dr. Wurster"), a clinical psychologist, reported in September 2005 that Gibson was able to

13

care for her personal needs. (Id. at 429.) In addition, the record is replete with references to Gibson mopping and cleaning the floor. (Id. at 264, 267, 383, 392.) In April 2006, Dr. Gheraibeh reported that Gibson was able to cook and engage in light household chores. (R. at 367.) Moreover, Gibson stated that she was able to walk and stand "as much as she wants." (Id.) Also, the ALJ considered Gibson's medical records which showed that her pain and range of motion in her right arm were improving. (Id. at 18.)

Gibson objects alleging that the ALJ's assessment of her credibility is not supported by substantial evidence. (Objections 4.) Specifically, she argues that her ability to do light housework "does not mean that she can perform substantial gainful activity." (Id.) The ALJ properly applied the Craig test. Further, Gibson does not cite any evidence in the record to support her position. Gibson's statements as to her abilities were inconsistent with other evidence in the record including Gibson's statements to medical providers and regarding her daily activities. Gibson's allegations of pain "need not be accepted to the extent that they are inconsistent with the available evidence . . . ." Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006). In light of Gibson's inconsistent statements regarding her pain, the ALJ properly concluded that Gibson's complaints of pain were not entirely credible. Therefore, the court finds that this objection is without merit. Based on the foregoing, the court adopts Magistrate Judge Gossett's Report and Recommendation.

It is therefore

**ORDERED** that the decision of the Commissioner is affirmed.

**IT IS SO ORDERED**.

                                                              s/Henry M. Herlong, Jr.
                                                              Senior United States District Judge

Greenville, South Carolina
November 9, 2009